# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

In the Matter of:

The Use of a Cell-Site Simulator to Locate the Cellular
Device Assigned Call Number (412) 901-3789

)
)
)
)
)

Case No. _18-907 M (N)_

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☒ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 18, United States Code, Sections 922(a)(1), 922(d)(1), and 922(g)(3); and Title 21, United States Code, Section 841(a)(1).

The application is based on these facts: See attached affidavit.

☒ Delayed notice of _30_ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

___ATF Special Agent Richard Connors___
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: _September 5, 2018_

_____
*Judge's signature*

City and State: __Milwaukee, Wisconsin__

__Honorable Nancy Joseph__, U.S. Magistrate Judge
*Printed Name and Title*

# AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, **Richard Connors**, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to determine the location of the cellular device assigned call number **(412) 901-3789,** (the "**Target Cellular Device**"), which is described in Attachment A.

2.     I am a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) assigned to the Milwaukee Field Office since October of 2015. I have been employed as a full time law enforcement officer for over 2 and a half years. I have received training at the Federal Law Enforcement Training Center in Glynco, GA. I attended the Criminal Investigator Training Program, as well as ATF's Special Agent Training Program. I have received training in the investigation of unlawful possession of firearms, the unlawful transfer of firearms, and the unlawful dealing in firearms without a dealers' license. Prior to becoming a Special Agent with the ATF, I received two bachelor's degrees from Northern Illinois University in the fields of Sociology and International Relations. I have received a Master's degree from Northern Illinois University in the field of American Government.

3.     I have training and experience in investigating narcotics and firearms trafficking, As a law enforcement officer, I have authored many criminal complaints

and search and seizure warrants, and I have participated in the execution of warrants, at which times narcotics, firearms, ammunition, records or receipts pertaining to such, and U.S. currency have been seized. I have debriefed defendants, informants, and witnesses who had personal knowledge regarding narcotics trafficking organizations and firearms trafficking. I am familiar with narcotics traffickers' methods of operation including the distribution, storage, importation, and transportation of narcotics, the collection of money that represents the proceeds of narcotics trafficking, and money laundering. Furthermore, I know large-scale drug traffickers use electronic equipment such as telephones (land-lines and cell phones), computers, telex machines, facsimile machines, currency counting machines, and telephone answering machines to generate, transfer, count, record and/or store information related to their drug trafficking, as well as to conduct drug trafficking activities.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. One purpose of applying for this warrant is to determine with precision the **Target Cellular Device's** location. There is reason to believe the **Target Cellular Device** is currently located somewhere within this district because on August 31, 2018, United States Magistrate Judge David E. Jones signed an order authorizing Sprint, Overland Park, Kansas, to provide the location of target cellular telephone

2

number (412) 901-3789, **Target Cellular Device**. Data received as of September 4, 2018 reveals that the **Target Cellular Device** is located in the City of Milwaukee, Wisconsin. However, the data provided by Sprint reveals a wide radius of the cellular telephone's location and is not as accurate as case agents need to determine a more precise location of the telephone. Pursuant to Rule 41(b)(2), law enforcement may locate the **Target Cellular Device** outside the district provided the device is within the district when the warrant is issued.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that Antwuan D. PUGH has violated Title 18, United States Code, Section 922(g)(3) (possessing firearms or ammunition as an unlawful user of or as an addict to any controlled substance); Title 18, United States Code, Section 922(d)(1) (selling or disposing of any firearm or ammunition to a known felon); Title 18 United States Code, Section 922(a)(1) (dealing firearms without a license); and Title 21, United States Code, Section 841(a)(1) (distribution of a controlled substance). Antwuan PUGH was charged with these crimes and is the subject of an arrest warrant issued on August 21, 2018. There is also probable cause to believe that Antwuan PUGH is aware of these charges and has fled. There is also probable cause to believe that the **Target Cellular Device's** location will assist law enforcement in arresting Antwuan D. PUGH, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

7. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18

3

U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

## PROBABLE CAUSE

8. Through the course of the investigation, as detailed below, case agents have identified Antwuan Pugh as an individual supplying controlled substances and firearms to individuals located in the Milwaukee community.

### A. Vehicle Stop of Antwuan PUGH and Search Warrant at the PUGH Residence

8. On December 1, 2015, City of Miwaukee Police Department officers (MPD) conducted a traffic stop of a 2000 black Lincoln town car, bearing state of Wisconsin license plate 922-XXN. Antwuan PUGH (DOB XX/XX/1993) was driving the aforementioned vehicle, which was registered to his mother. During a search of the vehicle, MPD recovered 0.7 grams of green leafy substance that field tested positive for THC, the active ingredient in marijuana. Also recovered from Antwuan PUGH's person was a White Samsung touchscreen cell phone, model number SM-G360T1. Shortly after the traffic stop, MPD executed a search warrant at 8142 N. Granville Road, Milwaukee, WI, 53224.

9. On December 1, 2015, upon his arrest, Antwuan PUGH gave a recorded statement after being read his Miranda rights which PUGH understood and agreed to waive. Antwuan PUGH stated he always smokes marijuana when he feels in a

4

"chill" mood. Antwuan PUGH stated he was arrested after officers located a bag of marijuana in his vehicle. Antwuan PUGH further stated that his brother, Kenyon PUGH, has access to his bedroom at the residence on N. Granville Road and would utilize it to change clothing and occasionally leave personal items.

10.     Law enforcement believes Antwuan PUGH and his older brother, Kenyon PUGH resided at 8142 N. Granville Road, Milwaukee, WI on December 1, 2015. Agents had conducted surveillance at the residence, and observed Antwuan PUGH exiting in and out of the residence on several occasions, and entering and exiting a 2000 black Lincoln town car, bearing state of Wisconsin license plate 922-XXN.

11.     Officers searched the bedroom believed to be shared by Antwuan and Kenyon PUGH, and recovered the following: (1) paper identifiers for Kenyon PUGH, along with an envelope marked "Tweezy," a known nickname for Antwuan PUGH; (2) 1.9 grams of green leafy plant like substance which field tested positive for the presence of THC; (3) two firearms: an Armscor of the Philippines handgun, model M1911-A1-FS, .45 caliber, bearing serial number RIA1686424; and a Glock handgun, model 21, .45 caliber, bearing serial number TNY752.  Law enforcement located several assorted brands and calibers of ammunition and several different magazines for firearms throughout the house. Additionally, law enforcement located the following empty gun boxes in the residence: Glock hangun boxes, model 23, .40 caliber, bearing serial numbers MHZ778, MHT876, PVL502; Glock handgun box, model 21, .45 caliber, bearing serial number TNY752; Glock handgun box, model 22c, .40

5

caliber, bearing serial number GHU315; one black plastic Intratec, 9mm, firearms case; one black plastic firearms case for a Armscor of the Philippines handgun, model M1911-A1-FS, .45 caliber, bearing serial number RIA1686424; one plastic black Plano firearms case; and one black cardboard Bersa handgun box for a model Thunder 45, .45 caliber, bearing serial number SG2977.

12. Antwuan PUGH has never been convicted of a felony offense.

## B. Antwuan PUGH's Post-Arrest Statement and Other Records

13. On December 1, 2015, during Antwuan PUGH's recorded mirandized statement, Antwuan PUGH stated that the firearms located in the house were in his bedroom and that both firearms in his bedroom were purchased by a girlfriend. Antwuan PUGH stated he bought three (3) or four (4) guns that year and had already sold them. Antwuan PUGH stated he sold a Glock firearm on the "street" and he did not know the person's name, Email, or phone number. Antwuan PUGH further stated that he had the two Glock firearms from the cases in his bedroom, but he sold those as well. Antwuan PUGH stated he has never bought a firearm at a gun store and only off of "Armslist" because it is cheaper.

14. Based upon the investigation, the PUGHs are suspected of purchasing eleven firearms off of "Armslist," many of which have been recovered during the commission of crimes throughout the City of Milwaukee.

15. On April 21, 2016, affiant received copies of reported wages from the Wisconsin Department of Workforce Development (DWD) for Antwuan and Kenyon PUGH. The DWD report outlines a person's reported earnings for any given

6

particular year. In 2015, the PUGH brothers reported earning a combined $243.86. In November of 2015 alone, Antwuan PUGH spent a combined $1,700 on four (4) Glock handguns from two different individuals. From December 2014 through Novemebr 2015,

## C. Antwuan and Kenyon PUGH's Post Search Warrant Activity

16. On March 11, 2016, Kenyon PUGH was a victim of a non-fatal shooting where he was struck in the left calf. The incident occurred at 6448 N. 106th St., Milwaukee, WI. Located at the scene was a white Lexus RX300 bearing state of Wisconsin License plate number 274-XET. A check of the registration revealed that it listed to to Regina Pugh (Kenyon and Antwuan PUGH's mother). Located in the center console of the vehicle was one (1) black 9mm M&P magazine containing four (4) unfired 9mm Aguila cartriges. Recovered from the scene were four (4) spent 9mm Aguila shell casings. Witnesses observed an individual running from the scene where the shooting occurred. This individual jumped into a Yellow, Chevrolet Monte Carlo. Footage from the hospital where Kenyon PUGH was taken showed Kenyon PUGH being dropped off in a Yellow, Chevrolet Monte Carlo.

17. Kenyon PUGH was interviewed at the hospital regarding this incident. Initially, Kenyon PUGH stated his name was Antwuan PUGH. Kenyon PUGH also stated the shooting occurred at a different address. Recovered inside of Kenyon PUGH's pocket was a key to the Lexus, which was recovered from the scene of the shooting. When investigators confronted Kenyon PUGH regarding the

7

inconsistencies in his statement, he continued to deny any involvement with the white Lexus, and the shooting on 106th Street.

### D. Antwuan PUGH's Cell Phone

18. On June 29, 2017, your affiant obtained a federal search warrant signed by the Honorable Magistrate Judge David Jones for one white Samsung touchscreen cell phone bearing serial number 354335/07/551193/3 (Device A). MPD recovered Device A from Antwuan PUGH on December 1, 2015.

19. On July 10, 2017, affiant examined the contents of Device A. The first section examined was entitled "Facebook Chat." Affiant is aware that individuals can utilize "Facebook Messenger" to communicate with other persons who have Facebook accounts. Individuals can utilize "Facebook Messenger" without a wireless connection to their mobile devices. Facebook Members can utilize any wi-fi network to access "Facebook Messenger." Your affiant recognized the Facebook profile "Twez Knockavitch" as a previous Facebook profile for Antwuan PUGH. Affiant viewed pictures for this Facebook profile, and these pictures match an MPD booking photo of Antwuan PUGH.

20. On several posts made by this profile, the user states his/her telephone number is 793-2282, which is the number that Antwuan PUGH provided to MPD on December 1, 2015, as referenced in Paragraph 19 of this affidavit.

21. Throughout the Facebook chat, the user "Twez Knockavitch" makes several posts regarding narcotics and firearms. For example, between February 29, 2016 and August 20, 2017, the user "Twez Knockavitch" refereced the sale and

8

acquisition of marijuana and ecstacy and sent photographs depicting what appears to be marijuana and ecstasy pills to potential customers. With regard to firearms, between February 16, 2016 and July 26, 2017, the user "Twez Knockavitch" referenced the sale and acquisition of firearms by referring to kinds and prices of firearms and sent photograhps depicting what appears to be firearms to potential customers. Additionally, the profile "Twez Knockavitch" made several references to possessing "heats," which I know is a common street term for a firearm.

22.    Furthermore, on November 23, 2015, the profile "Twez Knockavitch" posted the following comment in a group chat setting: "I shot they ass up the nigga momma don't want me to hurt him she gave me 375 cause the pulled off wit my pills." Further in the conversation, this user posts "I gave dude the pills he got in the truck like he was gonna count them instead he pulled off I shot 12 times fuck they van up I turn around they seen me shot once I roll my window down shot my last 3 pulled off made sure I want followed duck my car at Jessie crib call my nigga and he called his mom she paid me." Affiant believes Antwuan PUGH refered to the shooting that occurred on November 22, 2015, at 86XX N. 106th St., Milwaukee, WI. At the time of the shooting, witnesses observed a black Lincoln town car speed away from the scene of the shooting. Law enforcement officers know that at the time of the shooting, Antwuan PUGH operated a black Lincoln town car bearing state of Wisconsin license plate 922-XXN, as evidenced by the vehicle stop on December 1, 2015, and as detailed in Paragraph 8 of this Affidavit. On December 1, 2015, law enforcement recovered the Armscor of the Philippines handgun, model M1911-A5, .45 caliber, bearing serial

9

number RIA1686424, in Antwuan PUGH's bedroom, as detailed in pagagraph 11 of this affidavit. This firearm NIBIN tested positive to the shell casings recovered from the scene of the shooting that occurred on November 22, 2015 on 106th Street.

23. Affiant examined the text message portion of the cell phone. Your affiant observed several messages between Antwuan and Kenyon PUGH, dated November 30, 2015, regarding the sale and trade of firearms, types of firearms, and prices of firearms. Antwuan PUGH sent photos of firearms to Kenyon PUGH as well. Also in November 2015, Antwuan PUGH exchanged several text messages with other individuals who were inquiring about firearms that he had for sale. The subject of these message often included the prices of firearms.

24. Affiant examined the photo portion of the cell phone. Affiant was able to view several pictures of handguns that Antwuan PUGH sent to various individuals. On November 24, 2015, Antwuan PUGH created a photo of what appears to be him holding a model 1911, .45 caliber handgun, the same caliber handgun used in the shooting on November 22, 2015. Your affiant was able to view several different types of firearms displayed within the contents of Antwuan PUGH's cell phone.

E. **Antwuan PUGH's Facebook account "Tywaun Knockavitch"**

25. On August 25, 2017, your affiant obtained a federal search warrant for the contents of the Facebook page "Tywaun Knockavitch" with a corresponding Facebook ID of 10011308302732. The warrant was authorized by the Honorable Judge William E. Duffin. Your affiant obtaind the results of that warrant on Septmeber 27, 2017, the results covered the date of December 1, 2014 through August

10

25, 2017. Your affiant examined the posts and identified several key conversations that demonstrate narcotics and firearms distribution commited by Antwuan PUGH. For example, on January 18, 2017, "Tywaun Knockavitch" engaged in a conversation with "Darius Low" where Low requested "130 a half." Your affiant is aware that "half" can often refer to a half ounce of an illegal substance, with "130" referring to the price for half an ounce." In addition, from the date ranges between March 7, 2016 and August 20, 2017 Antwuan PUGH referred to sales and purchases of ecstasy. For example, on April 2, 2017, Antwuan PUGH conversed with "PrettyPetty Tey" who inquired about the price of pills. Antwuan PUGH responded, "5" and sent a picture of pills believed to be ecstasy.

26.     Antwuan PUGH also made several references to the acquisition and sale of firearms within his Facebook page from dates ranges February 16, 2016, through July 26, 2017. For instance, between May 21-23, 2017, Antwuan PUGH conversed with "East Mil" regarding the sale/purchase of firearms. Antwuan PUGH sent pictures of the different firearms that were for sale. Antwuan PUGH refers to two of the firearms as "9mm," and your affiant believes the third firearm photograph to be an AK-47.

F.     **Antwuan PUGH's Facebook account "Twez Knockavitch"**

27.     In September of 2017, your affiant located the Facebook profile for Antwuan PUGH under the alias "Twez Knockavitch" with a Facebook User ID number of 100013882987756. Affiant observed the photographs of the individual depicted on the profile page and positively identified Antwuan PUGH. The most

11

recent post on the page is a picture of Antwuan PUGH which was posted publicly on October 28, 2017.[1] The picture posted on October 28, 2017, shows Antwuan PUGH holding what appears to be a marijuana cigarette while riding in a vehicle. Your affiant believes this is the same Facebook profile used to discuss the shooting that was previously described in this affidavit.

28.     On January 22, 2018, your affiant observed the previous Facebook profile "Twez Knockavitch," had been changed to a different name. The name associated with the Facebook page listed as "Deshaun Robinson." Regardless of the name change, your affiant observed the profile picture of this page and the photo of Antwuan PUGH remained as the profile picture. Your affiant is aware that the process to change one's name on Facebook is as simple as clicking on "settings" and then "edit name." Your affiant checked the URL and Facebook ID for the page "Deshaun Robinson." The URL and Facebook ID are identical for the previous page "Twez Knockavitch" and the current profile page "Deshaun Robinson."

29.     On January 22, 2018, your affiant obtained a federal search warrant for the contents of the Facebook page "Twez Knockavitch" with a corresponding Facebook ID of 100013882987756. The warrant was authorized by the Honorable Judge William E. Duffin. Your affiant examined the contents of the Facebook report provided by Facebook on February 12, 2018. The following posts were located within

---

[1] The former Facebook profile for "Twez Knockavitch" and current profile "Deshaun Robinson" are not open to the public.

12

the contents of the Facebook page "Twez Knockavitch:" On July 9, 2017, the profile "Dashaun Robinson" provided "April Quartz" with the phone number for Antwuan PUGH stating, "I don't be on this page call me when u get a chance." In October 2017, on this page conversations occurred between Antwuan PUGH and others regarding the sale of a firearm and marijuana.

## G.    Antwuan PUGH's Facebook Account "Tywaun Knockavitch" (Re-filed on May 30, 2018)

30.    On May 30, 2018, your obtained a federal warrant for updated content on the Facebook page "Tywaun Knockavitch." The contents of the Facebook report provided from Facebook, Inc. covered the date range of August 25, 2017 through May 30, 2018. A review of these contents revealed that Antwuan PUGH has continued to traffic in illegal substances and firearms.

31.    On May 30, 2018, "Tywaun Knockavitch" and "Dee Solo" discussed "Dee Solo's" purchase of pills from Antwuan PUGH. In this conversation, Antwuan PUGH also attached a picture of the pill bottle, and at one point indicated that he also needed to contact Antwuan PUGH's brother, "You hit bro." Throughout the chats, with different individuals, continued to have conversations regarding the sale of pills.

32.    On May 12, 2018, in a chat between "Tywaun Knockavitch" and "Arquan Jackson," "Tywaun Knockavitch displayed a photograph of a firearm. Based upon the chat, your affiant believes that Antwuan PUGH traded pills for the firearm stating, "Just got it from my nigga I gave his all the pills..."

13

Tywaun Knockavitch: (Sent photo)



### H.      Controlled Purchase of prescription narcotics from Kenyon PUGH

33.     On August 17, 2018, your affiant participated in a controlled purchase of prescription narcotics from Kenyon PUGH. A controlled purchase is an operation conducted by law enforcement. the confidential source (CS) is searched prior to the operation so that no illegal contraband can be introduced during the purchase. The CS is then provided money for the purchase which will be used to obtain the illegal contraband (drugs, firearms etc.).  After purchase, the item will be handed over to law enforcement. The CS is then searched once more for contraband.

34.     On August 17, 2018. a CS and an undercover agent drove to the area of N. 107th St., and W. Brown Deer Rd., in Milwaukee County.[2] The CS met with Kenyon

---

[2] I believe that the CS is truthful and reliable because the CS has made statements against the CS' penal interest.  In addition, the CS' information was corroborated by other evidence developed during the course of this investigtation.  The CS was working with law enforcement as a result of a municipal paraphernalia charge.  The CS has previous convictions for narcotic drugs; bail jumping; disorderly conduct (domestic abuse); and possession of heroin.

PUGH who instructed the CS to meet him at a certain area. Kenyon PUGH indicated to the CS he needed to obtain the pills, but that he would return and meet the CS. At this point in time, your affiant observed Kenyon PUGH pull into the parking lot of 8245 N. 107th St., Apt. # 205, Milwaukee, WI, and park the Green Infiniti SUV (WI Tag NV8477) he was driving. Kenyon PUGH and an unidentified black female exited the vehicle and entered the common door that leads to Apt. # 205. Kenyon PUGH and the black female emerged from the residence approximately two minutes later and drove back to meet the CS and the undercover agent. The CS provided Kenyon PUGH the money and obtained 28 suspected hydrocodone/acetaminophen pills (10 mg/325mg each), 21 suspected alprazolam pills (2 mg each), and 3 suspected oxyco-done hydrochloride pills (30 mg each) which the CS turned over to law enforcement officers.

35.      After the transaction occurred, the same Green Inifiti SUV previously driven by Kenyon PUGH returned to 8245 N. 107th St., Milwaukee, WI, and the same black female exited the vehicle and entered into the common door that leads to Apt. # 205. The black female soon exited the residence and the Green Inifiti exited the parking lot and drove out of sight.

## I.      **Arrest and Search Warrant Execution**

36.      On August 21, 2018, United States Magistrate Judge David E. Jones authorized the search of two residences belonging to Antwuan and Keyon PUGH: 8245 N. 107th St., # 205, Milwaukee, WI, 53224 and 3900 W. Good Hope Rd., Apt # 1,

15

Milwaukee, WI, 53209, respectively. Also on August 21, 2018, Magistrate Judge Jones issued an arrest warrant for Antwuan D. PUGH.

37. On August 22, 2018, the search warrants were executed on the respective residences. Located at Antwuan PUGH's residence, 8245 N. 107th St., was Kenyon PUGH and Kenyon PUGH's girlfriend. Antwuan PUGH was not located at the residence. Upon a search of Antwuan PUGH's residence, law enforcement located in excess of $12,000, consisting of $100 in "buy money" provided by the CS on August 17, 2018, hundreds of pills of a yet to be identified substance, as well as a firearm.

38. At the time of the search, Keyon PUGH and his girlfriend stated they were unaware of Antwuan PUGH's whereabouts. Kenyon PUGH's girlfriend also stated that she had previously purchased a firearm for Antwuan PUGH and that she frequently smokes marijuana with Antwuan PUGH.

39. On August 23, 2018, Kenyon PUGH called his father at the number of 414-242-6019. During this phone call, Kenyon PUGH asked his dad, Anthony Pugh, to call "Tweezy." Subsquently, another male voice appears on the line and answers to the nickname "Tweezy," a known name for Antwuan PUGH. During the phone call, Antwuan PUGH provides the number **(412) 901-3789** as a number at which Kenyon PUGH can reach him.

40. On August 29, 2018, Kenyon PUGH called his mom, Regina Pugh, using the number 414-242-6019 (previously used number by his dad). During this call, Kenyon PUGH asks his mom what Antwuan's number starts with, and during the call someone in the background says it is a "412" area code. His mom states she thinks

16

there is a "901" in the phone number. Kenyon then goes on to state that he has the number and instructs his mother not to say Antwuan PUGH's number over the call. Therefore, I believe that Antwuan PUGH is the user of **(412) 901-3789**.

41.    Phone number **(412) 901-3789** is listed under the Sprint Carrier network.

## MANNER OF EXECUTION

42.    In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

43.    To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the **Target Cellular Device** or receiving signals from nearby cellular devices, including the **Target Cellular Device**. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the **Target Cellular Device** and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the **Target Cellular Device** and use that information to determine the

17

**Target Cellular Device's** location, even if it is located inside a house, apartment, or other building.

44. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the **Target Cellular Device**, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the **Target Cellular Device**, and law enforcement will limit collection of information from devices other than the **Target Cellular Device**. To the extent that any information from a cellular device other than the **Target Cellular Device** is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the **Target Cellular Device** from all other cellular devices.

## AUTHORIZATION REQUEST

45. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

46. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized

18

surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Cellular Device** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and [continue to] flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

47.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cellular Device** outside of daytime hours.

48.     A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number **(412) 901-3789**, whose wireless provider is Sprint.

# ATTACHMENT B

Pursuant to an investigation of Antwuan D. PUGH for violations of Title 18, United States Code, Section 922(g)(3) (possessing firearms or ammunition as an unlawful user of or as an addict to any controlled substance); Title 18, United States Code, Section 922(d)(1) (selling or disposing of any firearm or ammunition to a known felon); Title 18 United States Code, Section 922(a)(1) (dealing firearms without a license); and Title 21, United States Code, Section 841(a)(1) (distribution of a controlled substance), this Warrant authorizes the officers to whom it is directed to determine the location of the cellular device identified in Attachment A by collecting and examining:

1. radio signals emitted by the **Target Cellular Device** for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the **Target Cellular Device** in response to radio signals sent to the cellular device by the officers;

for a period of thirty days, during all times of day and night. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).

2